## W. H. SEAWELL v. T. W. HENDRICKS.

1. USURY—*Penalty—Recovery of.* Under a statute providing that a person who takes, receives, retains or contracts for any higher rate of interest than twelve per cent. per annum, shall forfeit all the interest so taken, received, retained or contracted for, and it is subsequently provided by the legislature that this section " is hereby repealed," and another section of the Statutes of 1893 provides generally, that "the repeal of any statute by the legislative assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purposes of sustaining any proper action for the enforcement of such forfeiture or liability," the right of the plaintiff to recover usurious interest provided under the former section is still complete, and it is not necessary that his right of recovering such usurious interest should be expressly reserved in the repealing act. The plaintiff's right to recover the forfeiture of usurious interest from the defendant is fully provided for, in the general law of the Territory, § 2697, remaining unrepealed.

2. REAL ESTATE—*Conveyance—Defeasance.* Where an absolute deed to land is given, accompanied simultaneously by bond or agreement of defeasance, the latter may, upon agreement and consideration between the parties thereto, be surrendered and cancelled so as to invest the estate unconditionally in the guarantee by force of the first deed, providing the transaction is conducted with fairness both as between the parties and as against the creditors of the mortgagor.

*Error from the District Court of Cleveland County.*

### STATEMENT OF FACTS.

This action for the recovery of usurious interest, was begun on the 31st day of January, 1895, by the plaintiff in error, in the district court of Cleveland county, against the defendant in error, T. W. Hendricks, to recover the sum of four thousand dollars alleged to have been paid by the plaintiff to the defendant above the rate of twelve

per cent per annum upon promissory notes made by the plaintiff to the defendant.

An amended petition having been filed by leave on May 4, 1895, the case came on to be heard on the 29th day of June, 1895, upon a demurrer thereto, upon the ground that the petition did not contain facts sufficient to constitute a cause of action, which demurrer was by the court sustained, and to which ruling of the court the plaintiff at the time excepted; and the plaintiff not electing to further plead in the case, final judgment was thereupon rendered by the court against the plaintiff, dismissing the case at the costs of plaintiff, to which decision and judgment of the court the plaintiff at the time excepted.

The amended petition alleges in substance that plaintiff borrowed three thousand dollars from plaintiff on the 7th day of November, 1890, and as evidence of this transaction the plaintiff executed and delivered to the defendant three promissory notes of said date: namely, one for the sum of one hundred and eighty dollars, due January 7, 1892; one for one thousand, one hundred and eighty dollars, due January 7, 1893; and one for two thousand, seven hundred and eighty dollars, due January 7, 1893, and upon the delivery of said promissory notes the sum of three thousand dollars was paid by the defendant to plaintiff, and no other or greater sum. These promissory notes included the sum of three thousand dollars and the sum of eleven hundred and forty dollars, which was interest on the said three thousand dollars, computed at the rate of eighteen per cent. per annum, and the further sum of three thousand dollars was thereafter, upon May 27, 1891, borrowed by plaintiff from defendant, making in all the sum of six thousand dollars, for which the plaintiff executed and delivered

his promissory notes to the defendant, and that afterward, on November 13, 1895, the plaintiff borrowed from the defendant the further sum of sixty dollars, and on September 5, 1895, the still further amount of eighty dollars.

Upon all these said several sums the plaintiff promised to pay to the defendant interest at the rate of eighteen per cent. per annum. The petition further alleged that, on November 7, 1890, the plaintiff and his wife executed to defendant an absolute warranty deed of conveyance to lots 6 and 7 in block 5, and lots 26 and 27 in block 6, in the town of Norman, this Territory, as a security for said loan.

At the same time and as a part of the same transaction it was agreed between the plaintiff and defendant, by a separate agreement in writing, that " upon payment of above described notes he will execute or cause to be executed a warranty deed transferring the above described property back to W. H. Seawell, his heirs, or to any person whom he may designate."

And that afterwards, at the time of making the subsequent loans, it was agreed between the plaintiff and the defendant that the warranty deed should also stand as a security for each and all of the various sums of money loaned by the defendant to the plaintiff. The amended petition further sets forth, that in pursuance of plaintiff's agreement to pay interest on all of the said sums of money at the rate of eighteen per cent. per annum, the plaintiff did pay as interest to the defendant, various sums of money, amounting in all to the sum of $5,873.80, in cash, and his note for forty-nine dollars more, amounting in the aggregate to the sum of $5,922.80.

It is further alleged in the petition, that:

"On or about the 6th day of December, A. D., 1894,

this plaintiff made a verbal agreement with defendant and three other persons, by which all of said parties agreed to form a joint stock company in the ownership, operation and management of the said opera house property, by which agreement said property was valued, and was to be put in by said plaintiff at the sum of $8,500, and this plaintiff was to have and retain a share in said property of one-eighth, said defendant was to have a like share of one-eighth interest therein, and each of said other persons was to have a share of one-fourth interest therein. That in pursuance to said agreement, and before the same was reduced to writing, but with the supposition that it would be fully consummated, said defendant deeded and conveyed to this plaintiff one undivided one-eighth interest in said real estate and opera house property, and all of said lots 26 and 27 in block 6 aforesaid; and it was further agreed that seven-eighths of said $8,500, to-wit, $7,437.50, was to be a cash payment of said notes, executed by plaintiff to defendant, with interest thereon at eighteen per cent. per annum, and said notes were then delivered up as paid, and said agreement of defeasance was, on the same day, cancelled and satisfaction acknowledged on the margin of the record thereof in the said office of the register of deeds.

"That thereafter said agreement, so far as the third parties were concerned, fell through, and that thereupon, and on or about the first day of January, A. D. 1895, the said defendant claimed the right to the ownership and title in said seven-eighths undivided interest in said opera house property at said valuation of $7,437.50, the agreed price at which defendant and said third parties were to take the said seven-eighths undivided interest therein. The defendant since that time has claimed absolute ownership in fee simple to said opera house property, being lots 6 and 7 in block 5, aforesaid, and still claims such ownership and title.

" The plaintiff here concedes that said defendant shall be taken and held to be the owner of said seven-eighths undivided interest in said opera house, that same shall be

taken and held to be a cash payment upon said borrowed money and interest thereon."

Plaintiff prayed judgment for four thousand dollars, the amount of money paid by the plaintiff to defendant over and above the said sum of $6,140, and legal interest thereon at twelve per cent. per annum, with interest upon said four thousand dollars from the 6th day of December, 1894.

*C. L. Botsford* and *Williams & Newell,* for plaintiff in error.

*T. E. Berry, Selwyn Douglas* and *McGregor Douglas,* for defendant in error.

The opinion of the court was delivered by

McATEE, J.:   The remedy sought for by the plaintiff in this action is based upon § 9, art. 6, ch. 16, p. 223, Statutes of Oklahoma, 1893, which provides, that:

"A person taking, receiving, retaining, or contracting for any higher rate of interest than the rate of twelve per cent. per annum, shall forfeit all the interest so taken, received, retained, or contracted for.   *   *   When a greater rate of interest has been paid than twelve per cent. per annum, the person paying it, or his personal representative, may recover the excess from the person taking it, or his personal representative, in an action in the proper court."

This section was repealed by the legislature of the Territory by an act approved February 21, 1895, providing that:

" Sections 6, 7, 8 and 9, of art. 6, ch. 16, of the compiled laws of 1893, entitled 'Contracts,' are hereby repealed."

It was provided by § 2697 of the Statutes of 1893, p. 545, that:

"The repeal of any statute by the legislative assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

It is the contention of the plaintiff in error that this general provision of the statute preserves to him the remedy for the recovery of the usurious interest paid to the defendant in excess of twelve per cent. We think this contention is well founded. The language of the statute is plain, that if any higher rate of interest than twelve per cent. per annum be taken the person so taking it "shall forfeit all the interest so taken, received, retained or contracted for."

The defendant is, therefore, subject to a "forfeiture" and he is subject to a liability "unless the repealing act so expressly provide" otherwise. The section of the statute providing the forfeiture and liability was repealed by the legislature without expressly providing that any person who was subject to a forfeiture or liability under it should be released therefrom, or that the forfeiture or liability should be extinguished. The § 2697 was not in any way affected by the repealing act, nor does the repealing act in any way touch, refer to, or relieve persons who were subject before its enactment to the "forfeiture" or recovery provided for the benefit of the person making such usurious payment by the section of the statutes above set out; and hence we consider the language of the statute peremptory, effective, and not clouded in any way, by doubt. (*Jenness v. Cutler*, 12 Kan. 500; *Peoples Bank v. Dalton*, 2 Okla. 476, 37 Pac. Rep. 807; *United States v. Reisinger*, 128 U. S. 99; *State v. Showers*, 34 Kan. 269; *State v. Boyle*, 10 Kan. 93.)

Upon a precisely similar statute it was said by the supreme court of North Dakota in the case of *National Bank of North Dakota v. Lemke*, 54 N. W. Rep. 521.

" That the repeal of a statute, penal in its nature, without a saving clause, operates to absolutely extinguish all penalties under such law, is, we think, quite well settled. But this rule of law has been abrogated by a general provision. of this state. (And refers to § 4767, Comp. Laws, which is the same as ours). Other states have substantially the same provision. For a construction of the Indiana statute, see *W. U. Tel. Co. v. Brown*, 108 Ind. 538, 8 N. E. Rep. 171. For Missouri statute, see *State v. Kas. City, etc. R. Co.*, 32 Fed. Rep. 722. For Kentucky statute, see *Com. v. Sherman*, 85 Ky. 686, 4 S. W. Rep. 790. In each of these cases the court enforces a penalty incurred under a statute that had been repealed prior to the time of the trial. The repealing statute of this state passed in 1890 is silent as to the penalties incurred under the former law. Hence, under this plain provision of § 4767, Comp. Laws, appellant is not relieved from that penalty."

And it is said in *Ex parte Larkin*, Okla., 25 Pac. Rep. page 745, as follows:

"It is also objected to this act that it is an independent act, and that a saving clause can only be made in the repealing statute itself. That the saving clause is usually found in the repealing act may be admitted, but that it must be found there cannot be conceded. In most of the states of the Union, a saving of rights and prosecutions under a repealed statute, is effected by general law, and no provision is made in the repealing act at all, but the repealing act and general law are construed together."

We shall, therefore, hold that the right of the plaintiff to recover under § 9, art. 6, ch. 16, Statutes of 1893, as claimed in the amended petition, is complete; that it was not necessary that his right of recovery therein provided should be expressly reserved in the

repealing act, but that it was sufficient, according to the uniform rule adopted in other states, that the plaintiff's right to recover the forfeiture from defendant was provided for in the general law of the Territory, § 2697, which remains unrepealed.

But it has been strongly urged by the defendant that no sufficient allegation of payment has been made by the amended petition by which it appears on the face of the petition that a case of usury has been made out. It is contended that the warranty deed originally executed as a mortgage, remains still a mortgage, and that it is necessary that the mortgagee should have executed a reconveyance of the property, or that foreclosure, judgment and sale were necessary in order to vest the real estate in the mortgagee. We cannot agree with this contention.

The amended petition alleges that the agreement of defeasance which accompanied the warranty deed, was cancelled and satisfaction acknowledged on the margin of the record thereof, in the office of the register of deeds. This was sufficient to vest the title absolutely in the defendant. Where an absolute deed to land is given, accompanied simultaneously with a bond or agreement of defeasance, the latter may, upon agreement and consideration, be surrendered and cancelled so as to vest the estate unconditionally in the grantee, by force of the first deed, provided the transaction is conducted with fairness, both as between the parties and as against the creditors of the mortgagor. (15 Amer. & Eng. Enc. of Law, 793; *Thrull v. Skinner*, 17 Pick. [Mass.] 213; *Rice v. Rice*, 4 Pick. [Mass.] 349; *Harrison v. Phillips Academy*, 12 Mass. 456.)

The amended petition avers that upon the loan of six thousand dollars the plaintiff paid to the defendant in

cash the sum of $4,576.30, and in the opera house property $7,437.50, which was agreed between the plaintiff and defendant to be cash payment upon said notes. The notes were thereupon surrendered and delivered up. These payments are all alleged to have been made between the 7th day of November, 1891, and the 6th day of December, 1894.

We think the allegations of the petition are plain, full and sufficient; that the plaintiff made out, under his amended petition, a case for recovery, and that the demurrer should have been overruled.

The judgment of the court is, therefore, reversed and it is ordered that the case be reinstated, and cause be proceeded with below in consonance with these principles.

Scott, J., who presided in the court below, not sitting; all the other Justices concurring.