J. C. COURSEY, Plaintiff in Error,

v.

Emery C. FAIRCHILD and Vila Fairchild,
Defendants in Error.

No. 41093.

Supreme Court of Oklahoma.

Dec. 26, 1967.

Arney, Barker & Donley, Clinton, for plaintiff in error.

Tom Hieronymus, Woodward, for defendants in error.

McINERNEY, Justice:

The mortgagor (borrower) gave a deed to minerals underlying a portion of mortgaged premises to mortgagee (lender) as additional consideration for lender's agreement to extend payment on an existing mortgage indebtedness and to accept a renewal note secured by a new mortgage. The question to be decided here is whether this deed was subject to cancellation, on redemption of the land from the lien of the new mortgage, because the mineral conveyance fell within the prohibition of 42 O.S.1961, §§ 10 and 11.

cause the mineral conveyance fell within the prohibition of 42 O.S.1961, §§ 10 and 11.

Borrowers, the Fairchilds, are owners of 718 acres of land which were encumbered by two mortgages prior to the execution of the original Coursey mortgage. The junior mortgagee procured a foreclosure judgment. The day the land was to be sold (at a foreclosure sale) subject to the lien of the senior mortgage, borrowers succeeded in obtaining a loan from J. C. Coursey, called here lender. They gave the lender a one-year note secured by a junior mortgage. With the proceeds of the new loan borrowers redeemed their property from the lien of the foreclosed second mortgage. As a part consideration for the loan borrowers let the lender use the mortgaged land for one year.

Borrowers failed to pay the one-year note when it came due and lender instituted foreclosure proceedings. Before the litigation was concluded the parties entered into a settlement. By its terms the time for payment of the one-year note was extended for a period of two years by a renewal note; the lender was granted a lease on the mortgaged premises at an agreed rental; the first year's rental was to be applied on the arrears then due on the senior mortgage and on the taxes upon the property, the balance, if any, was to be credited on the note; the second year's rental was to be used for current payments on the senior mortgage indebtedness and taxes, the remainder, if any, to be credited on the note.

Shortly before maturity date of the two-year note, the parties entered into another agreement. The evidence concerning the negotiations culminating in this agreement is in conflict but there is no dispute that the agreement was entered into for the purpose of extending the mortgage debt. By the terms of the agreement, borrowers executed a renewal note (bearing 6% interest) due five years from its date and secured by a new second mortgage; the lender was given a lease on the mortgaged tract (less a

few acres of pasture land) for a period co-extensive with the note at an agreed rental which was to be applied on current payments due under the senior mortgage and on taxes, with balance to be credited on the junior mortgage note. By an instrument dated some eleven days after the date the note and mortgage were signed, borrowers executed a mineral deed conveying to lender for a term of 25 years from date "an undivided 55 acre interest in and to all of the oil, gas and other minerals" underlying a part of the mortgaged tract. It is agreed that these instruments formed a part of a single transaction.

Eleven and a half months following the execution of their five-year note borrowers redeemed the land from the lien of lender's second mortgage by payment in full of the principal indebtedness together with all interest due. The day of the redemption lender executed a proper release of his second mortgage which was filed of record. Lender continued, however, to occupy that portion of the mortgaged premises he held under the terms of the lease agreement executed contemporaneously with the five-year note and mortgage, and declined to reconvey to the borrowers the mineral interest in the 55 acres. His refusal to vacate the land and to reconvey the mineral interest occasioned this litigation.

The trial court's judgment canceled the lease and the mineral deed. At the hearing on motion for new trial lender tendered to borrowers "full possession of all of the surface" of the premises formerly encumbered by his second mortgage. At issue in this appeal is solely the validity of the mineral deed which, according to lender's contention, was erroneously canceled.

■■■ At common law the title and possession of mortgaged premises passed to the mortgagee. Under our statutes a mortgage does not operate as a conveyance vesting in the mortgagee any estate in the land. It creates a mere lien securing the payment of a debt. Page v. Turk, 43 Okl. 667, 143 P. 1047. The title to the land remains in the mortgagor. No matter what the contractual arrangements between the parties may be, neither a lien nor a contract for one can serve to transfer title to the property which is subject to it. 42 O.S.1961, § 10; Mills v. Reneau, Okl., 411 P.2d 516, 519. Like equity, which regarded redemption *as the creature of the law rather than of contract,* our statute recognizes and confers a right to redeem as inherent in every mortgage. 42 O.S.1961, § 18; Moore v. Beverlin, 186 Okl. 620, 99 P.2d 886, 888. A mortgagor cannot be divested of his title until his right to redeem is extinguished by foreclosure decree and sale held pursuant thereto. Balduff v. Griswold, 9 Okl. 438, 60 P. 223. In a jurisdiction, such as ours, where the common-law doctrine of mortgages has been abrogated and an equitable theory of mortgages prevails, what is meant by a right to redeem is that upon discharge of the debt within the maximum permissible time, the mortgagor is entitled, by force of law, to have the mortgaged premises relieved from the lien and his entire estate restored to that extent which he would have had if the mortgage transaction had never taken place. Worley v. Carter, 30 Okl. 642, 121 P. 669, 673.

■■ The power of redemption which our statute confers upon mortgagor is regarded as a substantive property right. Worley v. Carter, supra [p. 672, 121 P. 669]. By force of 42 O.S.1961, § 11, *all contracts in restraint of mortgagor's right to redeem the land from a lien are void as contrary to public policy.* The cited enactment, which is but declaratory of a long and firmly established doctrine of equity, operates to invalidate any agreement, entered into by the parties, at the inception of the mortgage or contemporaneously therewith, as a part of or collateral to its execution, *or as an inducement to the making of the loan,* by which mortgagor waives, unduly fetters, or agrees not to exercise his statutory right of redemption to the fullest extent afforded by law. Worley v. Carter, supra; Moore v. Beverlin, supra; Rives v. Mincks Hotel Co., 167 Okl. 500, 30 P.2d 911; 36 Am.Jur.,

Mortgages, § 184, p. 785. As the earlier cases state, the mortgagor cannot effectively "clog [impair] his equity". A clog or restraint on the equity of redemption denotes "any provision inserted to prevent a redemption on payment or performance of the debt or obligation for which the security was given." Wyman, The Clog on the Equity of Redemption, 21 Harvard L.R. 459, 472. This means that a mortgagor may not by agreement effectually burden his land beyond the point of redemption and by so doing preclude himself from being revested, on discharge of the debt, with the same interest in the land which he would have held if the mortgage lien had not attached. The mortgagor may not disannex a portion of the mortgaged property, either by an express agreement or deed, and waive his equitable right of redemption. Worley v. Carter, supra, p. 672, 121 P. 669; Story's Equity Jurisprudence § 1019. In keeping with this doctrine the law will not, upon the discharge of the debt, permit a mortgagee to take advantage of an option to purchase the mortgaged premises at a specified amount, if such option was given *concurrently* with, and as a condition for, the making of a loan. Hopping v. Baldridge et al., 130 Okl. 226, 266 P. 469, 470; see also, 59 C.J.S. Mortgages § 113, pp. 159, 160. But this is not to say that a mortgagor may not grant such an option in a transaction occurring *after* the granting or renewal of the mortgage when the object sought to be accomplished is the extinguishment of the debt and the sale is effected for an adequate consideration in a transaction free from fraud or oppression. Speed et ux. v. Fariss et al., infra.

According to Pomeroy (4 Equity Jurisprudence, § 1193, p. 570), "[t]his doctrine is based upon the relative situation of the debtor and the creditor; it recognizes the fact that the creditor necessarily has a power over his debtor which may be exercised inequitably; that the debtor is liable to yield to the exertion of such power; and it protects the debtor absolutely from the consequences of his inferiority, and of his own acts done through infirmity of will. The doctrine is universal in its application, and underlies many special rules of equity." See also 36 Am.Jur., Mortgages, § 184, p. 785.

■ The rule against restricting the right of redemption stands preserved in Oklahoma by the express provisions of 42 O.S.1961, § 11. It applies with equal force and effect to agreements entered into as an inducement to the making of a renewal loan. The circumstances surrounding the transaction control the application of the rule rather than the form resulting from the transaction. Coussens v. Gilmore, Okl., 410 P.2d 879; Holden Land & Live Stock Co. v. Interstate Trading Co., 87 Kan. 221, 123 P. 733, L.R.A.1915B, 492.

■ The transaction from which the challenged mineral deed emerged cannot be treated as a separate, distinct and subsequent sale, as distinguished from a contract which is merely collateral to the making of a renewal loan. The record does not show any independent consideration moving to the borrowers other than one dollar, the adequacy of which to support the sale of 55 acres of minerals for a 25 year term we deem unnecessary to discuss, other than to note that this nominal consideration does not withdraw the transaction from the protection afforded by 42 O.S.1961, § 11. The subsequent release of the debt and mortgage obligation four years before maturity, even though the lender was under no such obligation according to the terms of the contract, Henderson v. Guest, 197 Okl. 443, 172 P.2d 605, is not independent consideration to support a *prior* sale of the minerals and forms no part of the transaction resulting in the conveyance of the minerals. Undisputed evidence demonstrates the conveyance was given to meet a condition exacted by the lender for making a renewal loan. The debt remained unextinguished and the mineral deed was sought to bind the land beyond the point of redemption. These distinguishing characteristics of the instant case render the cases relied upon by the lender inapplicable to the facts here. They announce the rule that the mortgagor may,

at any time *after* the execution of the mortgage, by *separate* and *distinct* transaction, sell the mortgaged premises (or any part thereof) to the mortgagee for sufficient consideration and in satisfaction of the debt, though the transaction is subject to scrutiny by the courts, and will not be enforced unless it is free from fraud, oppression or undue advantage. See, Moore v. Beverlin, supra [99 P.2d p. 888]; Speed et ux. v. Fariss et al., 189 Okl. 84, 113 P.2d 595; Pomeroy, 4 Equity Jurisprudence, § 1193, pp. 572, 573; 59 C.J.S. Mortgages § 818, p. 1562; 37 Am.Jur., Mtg., §§ 1156, 1158, pgs. 412, 414.

The contention is made by borrower that the mineral deed was additional security for the loan and therefore a mortgage. The mineral deed given to Coursey by the Fairchilds described property included in the mortgage held by Coursey. As we noted in Moore v. Beverlin, supra [99 P.2d p. 890], it would be highly improbable that one already having a mortgage would taken another in the form of a deed on the same property to secure the same debt, which would not constitute as good security as the mortgage already had. While the deed cannot be considered additional security, it must, under these circumstances, nevertheless be viewed as an impairment restraining the right of Fairchilds to redeem the mineral interest from the mortgage lien.

 The intentions of the parties to the agreement, and the fact that the Fairchilds profited by being permitted to speculate in mineral values by the extention of the debt, cannot be considered in this action to cancel the mineral deed. "Where a statute expressly declares that certain kinds of contracts shall be void, there is then no doubt of the legislative intention, and an agreement of the kind voided by statute is unlawful." Burke v. Tarrant Investment Co., 166 Okl. 179, 26 P.2d 949, 951. The conveyance was hence void because it operates to restrain the landowners' right of redemption contrary to the prohibition of 42 O.S.1961, § 11. The judgment of the trial court canceling the mineral deed is reasonably supported by the evidence.

Affirmed.

JACKSON, C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and LAVENDER, JJ., concur.